REQUESTED BY: Dale B. Johnson, Director, Department of Public Institutions
This office has received an opinion request from you regarding the general subject of patient escapees or patient walkaways from facilities operated by the Department of Public Institutions (DPI). After receipt of this request, we conferred with your legal counsel and, collectively, we determined that you are asking our opinion on two specific questions: First, whether law enforcement agencies are permitted to release the name and identifying information regarding an absconding, involuntarily committed patient to the press and to the general public. Second, whether DPI may release an involuntarily committed patient's name and identifying information to the press and to the general public to aid in the apprehension of said patient who walks away without permission from a DPI facility. Further, as to each of these two questions, you have inquired whether the answer differs depending on whether the patient was involuntarily committed by a mental health board upon a finding of mentally ill and dangerous or was committed by a court upon a finding of either incompetent to stand trial or not responsible by reason of insanity. We understand through conversations with your legal counsel that DPI has already concluded that it may release the name and identifying information of an absconding patient to law enforcement authorities to aid in the apprehension of the patient pursuant to Neb. Rev. Stat. § 83-344 and § 83-308.02
(1994). Therefore, we will not address that issue.
I.
 Are law enforcement agencies permitted to release the name and identifying information regarding an absconding, involuntarily committed patient to the press and to the general public?
Neb. Rev. Stat. § 83-109 (1994) defines the duties of the Department of Public Institutions to include the following:
 A record of every patient or resident of every institution shall be kept complete from the date of his or her entrance to the date of his or her discharge or death. Such records to be accessible only (1) to the department, a legislative committee, the Governor, any federal agency requiring medical records to adjudicate claims for federal benefits, and any public or private agency under contract to provide facilities, programs, and patient services, (2) upon order of a judge or court, or (3) in accordance with sections 20-161
to 20-166. In addition, a patient or resident or his or her legally authorized representative may authorize the specific release of his or her records, or portions thereof, by filing with the Department a signed written consent. . . .
Neb. Rev. Stat. § 83-1068 (1994), which is part of the Nebraska Mental Health Commitment Act, also addresses the subject of confidentiality of patient's records and allows for some exceptions to the confidentially requirement. In full, Neb. Rev. Stat. § 83-1068 (1994) reads:
 All records kept on any subject of a petition shall remain confidential, except as may be provided otherwise by law. Such records shall be accessible to (1) the subject (2) the subject's counsel, (3) the subject's parents or guardian, if the subject is a minor or legally incompetent, (4) the mental health board having jurisdiction over the subject, (5) persons authorized by an order of a judge or court, or (6) persons authorized by written permission of the subject. Upon application by the County Attorney or by the director of the facility where the subject is in custody and upon showing of good cause therefor, a judge of the district court of the county where the mental health board proceedings were held or of the county where the facility is located may order that the records shall not be made available to the subject if, in the judgment of the court, the availability of such records to the subject will adversely affect his or her mental state and the treatment thereof.
Further, pursuant to Neb. Rev. Stat. § 83-1069 (1994), any person who breaches the confidentiality of records required by § 83-1068 shall be guilty of a misdemeanor, in addition to any civil liability which may be incurred.
This office has previously considered whether patient names are considered part of a medical record. Specifically, a previous Attorney General's Opinion addressed the issue of disclosure of confidential information contained within county ambulance service records. The opinion, in referring to patients' names concluded that:
 . . . the names of patients, and any treatment provided to them by the ambulance service, fall within the definition of medical records "in any form concerning any person." Accordingly, that information may be withheld from the general public.
Op. Att'y Gen. No. 116 (July 22, 1985).
Thus, we conclude that the names of patients and identifying information fall within records kept on a subject or patient within the meaning of Neb. Rev. Stat. §§ 83-1068 (1994) and83-109 (1994). Generally, except for the circumstances described below, law enforcement agencies may not release patient names and identifying information to the press or public pursuant to the above quoted confidentiality statutes.
The exception to this general prohibition applies in circumstances where the court commits a person to a DPI facility and certain information such as the person's name is already a matter of public record. In our opinion, information which is already in the public domain because it is a part of judicial records open to the public may be released by law enforcement agencies. This exception is based in part on Neb. Rev. Stat. § 84-712.05 (Supp. 1995). Which provides as follows:
 The following records, unless publicly disclosed in an open court, open administrative proceeding, or open meeting or disclosed by a public entity pursuant to its duties, may be withheld from the public by the lawful custodian of the records:
 (2) Medical records, other than records of births and deaths and except as provided in subdivision (5) of this section in any form concerning any person, and also records of elections filed under section 44-2821.
(Emphasis added).
The above quoted section makes it clear that documents which are otherwise in the public domain as part of proceedings in open court may not later be withheld from the public. The same reasoning suggests that information which is otherwise in the public domain need not be maintained as confidential under §§83-1068 or 83-109.
In contrast, however, under Neb. Rev. Stat. § 83-1055
(1994), mental health board proceedings are closed to the public except at the request of the subject. Thus, the names of persons involuntarily committed by the Mental Health Board are not public record. Therefore, law enforcement agencies may not, in our opinion, forward the names and identifying information of persons involuntarily committed by the mental health board to the press or the public, unless one of the specific statutory exceptions apply, such as patient consent or court order.
 II. May DPI release an involuntarily committed patient's name and identifying information to the press and to the general public to aid in the apprehension of said patient who has walked away without permission from a DPI facility?
The patient confidentiality statutes quoted in the preceding section of this opinion, namely Neb. Rev. Stat. §§ 83-109 and83-1068 (1994), and the rationale set forth above, apply equally to your second inquiry.
The main exceptions to the patient confidentiality rule as to DPI's release of patient names to the general public is expressed in Neb. Rev. Stat. §§ 71-1,206.29 through71-1,206.30 (Cum. Supp. 1994).
 (1) No monetary liability and no cause of action shall arise against any psychologist for failing to warn of and protect from a client's or patient's threatened violent behavior or failing to predict and warn of and protect from a client's or patient's violent behavior except when the client or patient has communicated to the psychologist a serious threat of physical violence against a reasonably identifiable victim or victims.
 (2) The duty to warn of or take reasonable precautions to provide protection from violent behavior shall arise only under the limited circumstances specified in subsection (1) of this section. The duty shall be discharged by the psychologist if reasonable efforts are made to communicate the threat to the victim or victims and to a law enforcement agency.
(Emphasis added).
Nebraska statutes contain additional exceptions which are defined in Neb. Rev. Stat. §§ 20-163 through 20-165 (1991). However, these provisions are not applicable to your particular inquiry.
Additionally, facilities which treat patients for chemical dependency are also subject to confidentiality requirements of federal law. Under 42 U.S.C. §§ 290dd-3 through 290ee-3, a person, if found to have violated the strict confidentiality rules, can be penalized by a fine. Under these statutes, the law clearly states that a program or institution that is either directly or indirectly assisted by any department or agency of the United States cannot reveal the identity, diagnosis, prognosis or treatment of any patients unless they fall within a specific exception of the aforementioned rule. We have reviewed the federal statutes to determine whether any of the exceptions would be applicable to your inquiry regarding patients leaving a facility without permission. In our opinion, none of these exceptions would apply although there are exceptions for patient consent and a court order. Thus, if a patient is in a chemical dependency unit which is directly or indirectly assisted by the federal government, the strict confidentiality requirements of federal law apply.
In summary, in our opinion, DPI may not release the name and identifying information of a patient involuntarily committed to its facility to the press and to the general public, unless, that information is already in the public domain. This would occur, as set forth in response to your first inquiry, if the information is contained in court records already accessible to the public. If descriptive and identifying information about the patient is contained in court records which are already public record, that information can be released by DPI to the public and the press.
We are aware that both state and federal patient confidentiality laws, as summarized above, may operate to make the important task of finding and returning dangerous mentally ill patients to a secure facility more difficult which is obviously a matter of great concern for both the public safety and the patient's welfare. We suggest that the Department of Public Institutions consider the possibility of administrative actions to obtain either prior patient consent, as feasible, or prior court orders to allow the release of this identifying information to the public if the patient leaves the facility without permission. Both of these methods are recognized as exceptions under federal and state law, as set forth above. If you have any questions regarding this proposed action, please do not hesitate to contact this office.
Sincerely,
 DON STENBERG Attorney General
 Martin W. Swanson Assistant Attorney General
Approved By:
Don Stenberg
Attorney General